**FIRST NAT. CORPORATION OF PORT-
LAND v. COMMISSIONER OF IN-
TERNAL REVENUE.**

**No. 10704.**

Circuit Court of Appeals, Ninth Circuit.
Jan. 23, 1945.

George H. Koster and Bayley Kohlmeier, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, Harold C. Wilkenfeld, and Helen Goodner, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This is a petition to review a decision of the Tax Court sustaining the assessment of deficiencies in income and excess profits taxes of the petitioning taxpayer for the year 1937.

Taxpayer's books were kept on the accrual basis. At all times here material more than 95% of its voting stock was owned by Transamerica Corporation. The taxpayer owned all the stock of four small Oregon banks. The taxpayer and Transamerica between them owned 63% of the voting stock of the First National Bank of Portland (hereafter called First Bank).

In the spring of 1933 legislation was enacted in Oregon legalizing branch banking. First Bank wished to acquire the four small banks and operate them as branches, and taxpayer, as sole owner of their stock, desired thus to dispose of them. However,

the law under which First Bank was incorporated did not permit it to purchase stock of banks. As a substitute for such acquisition an oral agreement was made April 2, 1933, between the taxpayer and First Bank by which the properties of the four banks were turned over to the latter. Thereafter their businesses were operated by First Bank as its branches.[1] Negotiations in respect of the consideration to be paid culminated in the execution, on April 18, 1933, of five written contracts, one of which was between taxpayer and First Bank, the others between First Bank and the four 'small banks. Under the latter contracts First Bank agreed to assume the deposit and other liabilities of the four banks and to pay them in cash an aggregate amount of $364,558.70, which was less by some $235,000 than the taxpayer's investment in the stock of the four banks. The cash consideration (which went directly to taxpayer as sole stockholder) was paid simultaneously with the execution of the contracts.

Under its contract with the taxpayer First Bank agreed to pay to taxpayer additional amounts not exceeding the difference between the cash already received and the taxpayer's investment. The obligation to pay these additional amounts was contingent on future developments. The payments were to include three items: (a) The profit, if any, realized from the bond account of the four banks, (b) such net amounts as the four banks would have earned to and including the year 1937 had the transfer not been made, and (c) net amounts which might be recovered through liquidation of any assets of the four banks charged off prior to April 1, 1933. Payments on these items were to be made on

or before March 1st of each year beginning with 1934 and ending with 1938. The taxpayer agreed to accept the amounts in full satisfaction of the purchase price of the goodwill of the four banks and of the values, if any, of their deposits transferred to First Bank. Pursuant to this agreement taxpayer received from First Bank in the years 1933 to 1937, inclusive, a total of approximately $97,000, thus greatly reducing its investment loss.

The year 1937 marked the close of the transaction. In its income tax return for that year the taxpayer claimed a capital loss in the amount of the difference between its investment in the stock of the four banks and the aggregate amount paid by First Bank under the terms of the five contracts. (The deduction claimed was approximately $137,000, but it was stipulated in the proceeding before the Tax Court that the loss, if any were deductible, is the sum of $121,472.)[2] The Commissioner disallowed the deduction. The Tax Court agreed that the loss was not deductible, but put its ruling on a ground different from that urged by the Commissioner.

The contention of the Commissioner is, and has been from the start, that the claimed loss resulted from a liquidation of the four banks; that these liquidations were intercompany transactions because the income of the taxpayer and the four banks had been included in Transamerica's consolidated income tax return for the year 1933, in which year the liquidations are said to have occurred; and that under the consolidated return regulations, to which the taxpayer consented, any loss resulting from the liquidations was not an allowable deduction.[3]

---

[1] In August 1934 the four banks formally certified to the State Banking Department that all of their liabilities had been assumed by First Bank and that no claims had been presented or existed. The reports were approved in 1935.

[2] On the oral argument here counsel for the Commissioner disavowed any claim that recognition of the loss would result in a double deduction.

[3] Consult Section 141, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 532; Ilfeld Co. v. Hernandez, 292 U.S. 62, 65, 54 S.Ct. 596. 78 L.Ed. 1127. Treasury Regulations 78 were prescribed under § 141(b) of the 1932 Act.

Article 31(a) of these regulations provides: "Except as otherwise provided in

these regulations, the consolidated net income of an affiliated group, which makes or is required to make a consolidated return for any taxable year, shall be the aggregate of the gross income of each of the members of such group less the aggregate of the allowable deductions of each of such members, except that gain or loss will not be recognized upon transactions between members of the group (referred to in these regulations as 'intercompany transactions')."

Article 37(a) provides: "Gain or loss shall not be recognized upon a distribution during a consolidated return period, by a member of an affiliated group to another member of such group, in cancellation or redemption of all or any portion of its

The Tax Court did not regard the transaction as a liquidation. It found, instead, that the taxpayer and First Bank merely entered into an agreement, oral at first, but later reduced to writing, the substance of which was that the taxpayer would transfer to First Bank all of its rights and interest in the four banks in exchange for cash and an agreement to pay additional amounts that might be realized in the future. To put it shortly the Tax Court found as a fact that the transaction amounted to a sale, with tax consequences not different from those which would have obtained had taxpayer actually sold its stock to First Bank.

■ The Court found, however, that the 1933 income return of First Bank was included in the consolidated return filed by Transamerica for that year; and on the basis of this finding it reached the conclusion that the course of dealing between the taxpayer and First Bank was an intercompany transaction, hence no gain or loss therefrom is recognized.[4] The Commissioner concedes that the Court was mistaken, in that, as a matter of fact, the 1933 return of First Bank was not and indeed could not have been included in Transamerica's consolidated return. It accordingly becomes necessary to reject the finding on which the decision below depends, namely, that the sale by taxpayer to First Bank was intercompany.

■■ We go back momentarily to the Commissioner's original contention. If one were to look merely at the form the transaction took it would perhaps be necessary to agree with him that the loss grew out of a liquidation of the four banks. But the problem is basically a factual one. The Tax Court, disregarding form, looked realistically at the substance of what was done and the object sought to be accomplished. It found that there was but a single transaction and that the course of dealing amounted, not to a liquidation, but to a sale by the taxpayer of its interest in the banks. The

finding has support in the evidence and we are obliged to accept it.

There remains to be considered the Commissioner's alternative argument, namely, that the loss was not sustained in 1937 but prior thereto. All of the events which fixed the taxpayer's loss, says the Commissioner, had occurred in 1933, hence the loss should have been claimed in that year. The Tax Court apparently deemed it unnecessary to consider this aspect. If the question were close we would feel constrained to send the case back for a finding, but it is not thought that the situation is sufficiently doubtful to warrant a remand.

■■ If a taxpayer errs in failing to claim a permissible deduction the error can not be rectified by taking the deduction in a later year. United States v. Ludey, 274 U.S. 295, 304, 47 S.Ct. 608, 71 L.Ed. 1054. On the other hand a capital loss can not be claimed while there remains a reasonable possibility of recoupment. Losses, to be deductible, must in general be evidenced by completed transactions, fixed by identifiable events. The loss must, within reason, be final and irrevocable. Cf. 5 Mertens Law of Federal Income Taxation, p. 2815; Dresser v. United States, 55 F.2d 499, 74 Ct.Cl. 55. Applying the rule to this case, it appears to us that there was in 1933 a fair probability that the taxpayer would recoup a substantial portion of its loss. Substantial recoveries were in fact made on all three of the items specified in the contract with First Bank; and looking at the situation as of April, 1933, it was not at all unreasonable to expect that there would be recoveries. One need not then have been a confirmed optimist to anticipate an improvement in banking and general business conditions, accompanied by a rise in value of securities and other forms of property. Under the circumstances the loss was not claimable until the amount finally payable under the contract had been ascertained.

Reversed.

---

stock; and any such distribution shall be considered an intercompany transaction."

4. See note 2 above. Article 33 of Tr. Reg. 78 provides that gain or loss may be recognized from the sale of stock or bonds during a consolidated return period "ex-

cept in the case of a disposition (by sale, dissolution, or otherwise) during a consolidated return period to another member of the affiliated group (see articles 31 and 37)."