**LOEWI & CO., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11456.**

United States Court of Appeals Seventh Circuit.

April 16, 1956.

Rehearing Denied May 18, 1956.

Harvey W. Peters, Milwaukee, Wis., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Lee A. Jackson, Robert N. Anderson, Stanley P. Wagman, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before LINDLEY and SWAIM, Circuit Judges, and PLATT, District Judge.

SWAIM, Circuit Judge.

The question presented is whether or not the petitioner, Loewi & Co., incurred during its fiscal year ending November 30, 1946, either a "bad debt" deductible from income under Section 23(k) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(k) (1), or a "loss" deductible under Section 23(f), 26 U.S.C.A. § 23(f).

The petitioner is a stockbroker. During 1946 it purchased for a customer certain "when, as and if issued" contracts to purchase shares of stock of certain railway corporations. These contracts constituted a promise to buy a certain number of shares of such stock at a certain price when and if the courts approved the reorganization of these corporations and the shares were issued. The price of these contracts fluctuates according to the market's estimate of the value of the stock when and if is-

sued. The holder of "when issued" contracts is bound to buy the stock at the contract price when it is issued even though its market value has then gone down. It is the practice of the brokerage business that when the market value of "when issued" contracts is falling, the holder of those contracts must "mark to the market." That is, he must deposit with the broker, from whom he is buying, an amount equal to the difference between the contract price and the market value of the securities to be issued. This is done so that the selling broker will be assured that the investor will carry out his contract when and if the securities are issued no matter how low their value is at that time. If the investor refuses to buy the securities but has "marked to the market" the broker will still have the profit he would have made under the contract: he will have the securities to sell at their then market value plus the amount the securities lost in market value after the contract was executed.

Here the petitioner's customer placed with his stockbroker, the petitioner, the order to purchase such contracts. The petitioner placed corresponding purchase orders for the contracts with a selling broker who specialized in that type of securities. In 1946, after the contracts had been made, the market began to fall, and the petitioner was required to "mark to the market" with the selling broker of the "when issued" securities. The customer was, in turn, required to deposit with the petitioner an amount at least equal to the amount that the petitioner had to deposit with the selling broker. As the market continued to fall, the customer said that he was unable or unwilling to make further deposits. However, the petitioner was required to continue to "mark to the market" with the selling broker.

In September of 1946 the petitioner had deposited $123,759.88 with the selling broker, and the petitioner's customer had deposited only $63,795.20 worth of securities with petitioner. After the customer failed to meet the petitioner's

demand for a larger deposit, the petitioner and its customer entered into an agreement whereby the customer assigned 'to the petitioner the "when, as and if issued" contracts and the $63,-795.20 which the customer had deposited with the petitioner, and the petitioner assumed all liabilities under the "when issued" contracts and relieved the customer of all liabilities to the petitioner. The petitioner contends that it thereby, in effect, released the debt owed to it by its customer. On this theory the petitioner now claims a deduction under Section 23(k) (1) of the amount of the difference as a bad debt which became worthless in 1946, or, in the alternative, as a business loss under Section 23(f). The Tax Court decided against the petitioner on both issues and disallowed the deduction. 23 T.C. 486.

■ Section 23(k) of the Internal Revenue Act of 1939 provides that in computing net income a corporate taxpayer may deduct "debts which become worthless within the taxable year * * *." There must be an actual, enforceable obligation to pay, Commissioner of Internal Revenue v. McKay Products Corp., 3 Cir., 178 F.2d 639, and collection of that obligation must seem (beyond expectation) hopeless to a reasonable man in that area of business, Mayer Tank Mfg. Co. v. Commissioner, 2 Cir., 126 F.2d 588. The Tax Court decided that the petitioner's case did not meet either of these requirements.

■ The court held that the accepted practice of "marking to the market" did not create a legally enforceable obligation. The only basis for legal obligation is the "when, as and if issued" contract, and the duties arising under it are not finally defined until the stock is actually issued. The practice of "marking to the market" is designed to protect the selling broker from loss through default of the buyer. The seller can make "marking" a condition of the contract, but it cannot enforce payment of the difference between contract and market price of the to-be-issued stock until

the stock is actually issued and that amount becomes fixed.

■■ The petitioner argues that because it is an "accrual basis taxpayer" the Commissioner should have allowed a deduction of its "debt" even though actual payment had not become enforceable. This contention is quickly answered by a short quotation from Fourth Ave. Amusement Co. v. Glenn, 6 Cir., 201 F.2d 600, 605:

"A liability does not accrue within a given taxable year unless the final event which fixes the amount and determines the liability of the taxpayer to pay occurs within that year."

The taxpayer in the Glenn case also used the accrual method of accounting for tax purposes. Although the "liability" discussed in that case was a business expense, the same principle applies to bad debts. A debt does not accrue until the occurrence that "fixes the amount" and makes the loss of the debt reasonably certain. Milton Bradley Co. v. United States, 1 Cir., 146 F.2d 541. In the Bradley case the court said:

"The liability to pay in the future, contingent upon something which may or may not occur, is not indebtedness, and the taxpayer may not treat as worthless debts amounts which are at a particular time merely contingent liabilities. [Citing authority.]" 146 F.2d at page 542.

If the petitioner had closed out its customer's account and sold the contracts at their then market value, the petitioner could, of course, have sued the customer for the difference between what it paid for the contracts and the amount it sold them for. And if the customer could not pay, that amount would be deductible as a bad debt. Here, however, the amount of the customer's obligation was constantly changing, and the entire obligation could disappear with a rise in the stock market. The customer's failure to meet his obligation to "mark to the market" was a breach of his contract with the petitioner and would have jus-

tified the petitioner in closing his account. But until the obligation was made final by either the closing of the account or the issuance of the securities, it was not collectible in a legal proceeding. As such, under the Bradley case, supra, it was not a "debt" within the meaning of Section 23(k).

 In Liggett's Estate v. Commissioner, 10 Cir., 216 F.2d 548, the taxpayer loaned money to a corporation in which he and his wife were the only stockholders, and took the corporation's note in return. Later, in order to secure a second loan from a bank the taxpayer cancelled the corporation's promissory note. In holding that the taxpayer could not deduct the note as a bad debt, the court said:

"We think the law is settled that a creditor may not voluntarily cancel a debt which has value and then claim a deduction because the debt is now valueless." Liggett's Estate v. Commissioner, 10 Cir., 216 F.2d 548, 550.

Our case is analogous; the petitioner cancelled its customer's obligation to it in return for the securities already deposited and the chance of profiting if the value of the contracts went up. Of course, if there was a worthless debt before cancellation, it would be deductible. But as we have said, the Tax Court was justified in holding that there was no debt; and, as we will show, the Tax Court was also justified in holding that the petitioner's chances of collecting whatever debt might have arisen were not hopeless.

 It is clear that to be deductible under Section 23(k) (1) a debt must appear worthless to a reasonable business man. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Mayer Tank Mfg. Co. v. Commissioner, 2 Cir., 126 F.2d 588; Raffold Process Corp. v. Commissioner, 1 Cir., 153 F.2d 168. The Tax Court held that recovery of any obligation owed to petitioner by its customer did not appear so unlikely as to be a "worthless debt," and we believe there was sufficient evidence for this holding. It was not known what amount would be due to the petitioner when the stocks were actually issued. A reasonable stockbroker might well have thought that the market would rise enough that by the time the stock was issued the $63,795.20 which the customer had deposited with petitioner would be enough to cover the difference between the contract price and the market price. The fact that the petitioner made this contract with its customer indicates that reasonable stockbrokers *did* think that there was a good chance that the market would rise before the stock was issued. The fact that this is actually what happened, and that the petitioner eventually made a small profit on the contracts, lends credence to the Tax Court's finding that this obligation was not worthless in September of 1946.

██ The Tax Court held that petitioner did not suffer a deductible "business loss" under Section 23(f) of the Code, although petitioner had not based its claim on that ground. On appeal the petitioner admits that it had not raised the question of a deductible "loss" before the Tax Court, but claims that the Tax Court was in error in deciding that it had not suffered such a loss.

The Tax Court was clearly correct in holding that the transaction between the petitioner and its customer in 1946 did not involve a deductible business loss. Before there is a valid deduction under Section 23(f) there must be a definite and ascertainable loss. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; Price v. Commissioner, 4 Cir., 106 F.2d 336; First National Corp. v. Commissioner, 9 Cir., 147 F.2d 462. In the latter case the court said:

"On the other hand a capital loss can not be claimed while there remains a reasonable possibility of recoupment. Losses, to be deductible, must in general be evidenced by completed transactions, fixed by identifiable events. The loss must, within reason, be final and irrevocable." First National Corp. v.

Commissioner, 9 Cir., 147 F.2d 462, 464.

The petitioner here did not incur an ascertainable loss in 1946. It merely executed a contract with its customer on which it might have suffered a loss. But as a matter of fact, no loss was ever actually incurred.

We find no prejudicial error. The decision of the Tax Court is

Affirmed.