**337 A.2d 796.**

THOMAS R. MERLINO *et ux. vs.* TAX ASSESSORS FOR THE
TOWN OF NORTH PROVIDENCE *et al.*

MAY 21, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. On June 29, 1973, the plaintiffs, husband and wife, filed a complaint against the defendants, in their capacities as tax assessors and members of the Town Council of the Town of North Providence. The plaintiffs alleged therein that they were being disproportionately taxed on a certain parcel of real estate owned by them in that town as a result of the December 31, 1972 assessment by the defendant tax assessors. The plaintiffs prayed that the court order the defendants to cease and desist the discriminatory practices outlined in their complaint and that the court order the defendants to submit to the court within a reasonable time a comprehensive plan for the general revaluation of all ratable real property located in the town. They contended then, as they do now, that the practices of the tax assessors violated the provisions of G. L. 1956 (1970 Reenactment) §44-5-12 and their rights under art. I, §2 of the Rhode Island Constitution and the equal protection clause of the fourteenth amendment to the United States Constitution.

On October 19, 1973, in answer to plaintiffs' request for a preliminary injunction, a consent decree was entered in the Superior Court. The decree contained the following orders:

> "(1) That pending final hearing therein, and in the meantime, a preliminary injunction issue ordering defendants to quash the assessed valuation of $18,900.00 imposed by defendants on plaintiffs' property on December 31, 1972 and to reinstate the December 31, 1971 valuation of $12,300.00.
>
> "(2) That defendants refund to plaintiffs monies paid by plaintiffs in excess of the $718.32 properly due according to the restored valuation of $12,300.00 said excess amounting to $385.44."

When the case was reached for trial on the merits in the Superior Court, the parties agreed to submit the dispute for decision by the court upon memoranda of law and the following agreed statement of facts:

> "1. This cause concerns the tax assessed against the single family dwelling located at 28 Bicentennial Way, North Providence, Rhode Island and designated as Assessors' Plat 25, Lot 441.
>
> "2. The assessed valuation of said dwelling on December 31, 1971, then owned by John and Judith Campbell, was $12,300.
>
> "3. The assessed valuation of said dwelling on December 31, 1972, then owned by plaintiffs, was increased from $12,300 to the present level of $18,900, an increase of 53.7%.
>
> "4. This increase in assessed valuation of plaintiffs' property was not occasioned by any physical improvements of said property.
>
> "5. Defendant tax assessors and their predecessors in office have not performed a general revaluation of all ratable real property located in the Town of North Providence since 1960.
>
> "6. Since 1960, defendant tax assessors and their predecessors in office have followed the systematic prac-

tice of increasing assessed valuations of real property under only two conditions: change in physical nature of the property or sale of the property.

"7. On December 31, 1972, defendant tax assessors increased the assessed valuation of real property sold during the previous twelve months. The new assessed valuations were generally determined to be sixty per cent (60%) of the ostensible purchase price as reflected by the tax stamps located on the respective deeds.

"8. On December 31, 1972, defendant tax assessors increased the assessed valuation of plaintiffs' dwelling to approximately 60% of the $31,400 purchase price as reflected by the tax stamps located on the deed to said property.

"9. On December 31, 1972, defendant tax assessors did *not* change the assessed valuations of the single family dwellings located at 24, 27, 31, 32, or 35 Bicentennial Way since said properties were not sold during the previous twelve months.

"10. On December 18, 1973, it was stipulated in open court that:

> On the assessment date of December 31, 1972, and on previous assessment dates, defendant tax assessors did *not* increase the assessed valuations of those parcels of property experiencing a transfer of title during the previous twelve months where the recorded deeds had no transfer stamps affixed evidencing consideration for the conveyance."

On March 12, 1974, the trial justice to whom the matter was referred rendered a decision in favor of defendants. On the same day a judgment was entered for defendants and the preliminary injunction issued on October 19, 1973 was vacated. The plaintiffs filed an appeal from that judgment.

On March 28, 1974, plaintiffs filed a motion pursuant to Super. R. Civ. P. 60(b) to vacate the decision rendered on March 12, 1974 and to certify the matter to this court for

hearing and determination. This motion was heard by a justice of the Superior Court and denied. The plaintiffs filed an appeal to this court.

On May 16, 1974, defendants filed a motion to dismiss plaintiffs' action on the ground that plaintiffs had sold the property involved in this action at a purchase price greater than that paid by plaintiffs, as evidenced by tax stamps affixed to the pertinent deeds, certified copies of which defendants attached as exhibits to the motion to dismiss. This motion was heard by a justice of the Superior Court on June 19, 1974 and granted. The plaintiffs filed an appeal from the granting of that motion.[1]

### Defendants' Motion to Dismiss

We consider initially plaintiffs' contention that the trial justice erred in granting defendants' motion to dismiss. As stated above, defendants based their motion on the ground that plaintiffs had sold their property on April 23, 1974, at a purchase price greater than that paid by them. From this, it appears, defendants argued that since plaintiffs had no further interest in the subject real estate, the question was moot. The trial justice obviously agreed and granted the motion.

For the reasons that follow we hold that the trial justice erred in granting the motion to dismiss. For the purposes of this case we shall assume that the trial justice had the right to hear and decide defendants' motion.

---

[1]The record indicates that no judgments were entered pursuant to the trial justice's decisions denying plaintiffs' motion to vacate and granting defendants' motion to dismiss, nor do the jacket entries indicate that any were entered as required by statute. In order to avoid a delay in the disposition of this case, we remanded sua sponte the papers to the Superior Court and directed the parties to have nunc pro tunc judgments entered. In due course judgments were entered in the Superior Court denying plaintiffs' motion to vacate and granting defendants' motion to dismiss, and the papers were then returned to this court. *See Hamaker* v. *Gagnon,* 110 R. I. 709, n.4 at 711, 297 A.2d 351, n.4 at 353 (1972).

Notwithstanding the provisions of the consent decree entered on October 19, 1973, there is nothing in the agreed statement of facts or anywhere else in the record showing that the terms of that decree were carried out. Specifically, there is nothing in this record indicating that monies paid by plaintiffs in excess of the tax due on the assessed valuation of $12,300 was ever returned. Indeed, it appears that plaintiffs paid the sum of $1,103.76 on the basis of the increased valuation of $18,900 and received no refund as ordered in the October 19, 1973 consent decree. Thus, if plaintiffs prevailed in this appeal, they would be entitled to a refund of $385.44. In the circumstances, the fact that the property had been sold subsequent to the assessment at a greater price than plaintiffs paid has no bearing on plaintiffs' entitlement to a refund if they prevail on this appeal and, therefore, the action was not moot because of such sale.

### The Motion to Vacate

The plaintiffs based their motion to vacate on the provisions of G. L. 1956 (1969 Reenactment) §9-24-25, which reads as follows:

> "Certification to supreme court on agreed statement of facts.—Whenever any civil action, legal or equitable in character, is pending in a district court or in a superior court, and the parties shall file in the clerk's office an agreed statement of facts in such action, the court shall certify the action to the supreme court to be there heard and determined. After having decided the action the supreme court shall send back the papers therein, with its decision certified thereon, to the court from which the action was certified, which shall enter final judgment upon the decision."

They contend that the provisions of §9-24-25 are mandatory and that the trial justice should have certified the matter directly to this court instead of deciding it himself.

They rely also on the provisions of Super. R. Civ. P. 72(b), which reads as follows:

"(b) Upon Court's Own Initiative. Whenever a statute provides for certification of an action or any question arising therein by the Superior Court to the Supreme Court on the initiative of the Superior Court, the court shall, prior to certification, afford the parties an opportunity to be heard on the issue of certification and on the form any certified question shall take, irrespective of whether the applicable statute directs the Superior Court to certify or vests in the Superior Court discretion with respect to certification."

They contend that this case is subject to the provisions of §9-24-25 and Rule 72(b); that neither §9-24-25 nor Rule 72(b) vests any discretion in the Superior Court as to certification; and that once an agreed statement of facts is filed, certification is mandatory under §9-24-25 and Rule 72(b).

We do not agree with plaintiff's arguments on this issue and for the reasons that follow, we affirm the trial justice's denial of plaintiffs' motion to vacate.

Although we do not have the benefit of a transcript of the hearing on this motion or of the trial justice's decision, it appears from the statements in the opposing briefs that the trial justice based his denial of plaintiffs' motion on the ground that neither party filed a motion as required by Rule 72(a). In the absence of the motion, he held that the parties were not entitled to have the case certified directly to this court for hearing and determination. We agree with his ruling. In our judgment he was correct in holding that Rule 72(a) was controlling in this situation.

Rule 72(a) provides:

"(a) Upon Motion of a Party. Whenever a statute provides for certification of an action or of any question arising therein by the Superior Court to the Supreme Court application for certification shall be made by motion served on every other party at least 5 days

prior to the time fixed for hearing thereon. The motion shall specify the matter sought to be certified."

We had occasion to discuss Rule 72(a) in *Nunes* v. *Town of Bristol,* 102 R. I. 729, 731, 232 A.2d 775, 777 (1967), where we said:

> "Since this certification appears to have been initiated by the parties on the filing of an agreed statement of facts, it should be noted also that neither party filed in the superior court a motion for certification as is required by the provisions of rule 72(a) of the rules of civil procedure of the superior court. In deference to orderly procedure, it behooves all parties when they invoke our assistance pursuant to a certification statute to adhere with care to the established procedures incidental thereto. By failing to do so, they run the risk of an improper certification which we, quite properly, will not answer."

As we indicated in *Nunes,* compliance with Rule 72(a) is a condition precedent to certification under §9-24-25, and failure to initiate actions by motion may result in failure to obtain action by this court on an agreed statement of facts. In the absence of such a motion, the responsibility to decide the questions raised by the agreed statement of facts rests in the Superior Court. *See W. P. Hamblin, Inc.* v. *Sprague,* 50 R. I. 99, 145 A. 307 (1929). *See also* 1 Kent, *R. I. Civ. Prac.* §72.6 at 505 (1969), wherein the author states:

> "Rule 72(a) provides that when certification is sought by a party, application shall be made by motion, to be served on all other parties at least 5 days prior to the time fixed for hearing thereon. The motion should specify the statutory section under which certification is sought and the precise matter sought to be certified, to the end that the record will be clear whether the entire action or a specific question is to be brought before the Supreme Court. In the interest of clarity the Supreme Court has pointed out the literal requirement of a motion where the parties submit an agreed statement for certification under G. L. 1956,

§9-24-25, as amended. Such motion can be made by either party and assented to by the other. It would seem that a written stipulation of the parties would obviate the need for a motion, but such stipulation should contain the same detail as to the certification required to be included in a motion."

Rule 72(b) is of no help to plaintiffs. It merely provides that

"* * * the court shall, prior to certification, afford the parties an opportunity to be heard on the issue of certification and on the form any certified question shall take * * *."

Rule 72(b) does not direct the court to certify on its own motion.

### The Trial Justice's Decision on the Merits

The trial justice held that plaintiffs had failed to prove that they were being disproportionately taxed as a result of the December 31, 1972 assessment. In urging that the trial justice erred, plaintiffs argue here, as they did in the Superior Court, that the practices of the town's tax assessors violate G. L. 1956 (1970 Reenactment) §44-5-12, and art. I, §2 of the Rhode Island Constitution, and the equal protection clause of the fourteenth amendment to the United States Constitution. We hold that on the basis of the facts set forth in the agreed statement of facts the trial justice was correct in finding that plaintiffs had failed to prove that they were being disproportionately taxed as a result of the assessment on December 31, 1972.

Section 44-5-12, as amended by P. L. 1965, ch. 115, §1, provides that all real property liable to taxation shall be assessed at its full and fair cash value[2] or at a uniform per-

---

[2] Full and fair cash value means fair market value. *Allen* v. *Bonded Municipal Corp.*, 62 R. I. 101, 4 A.2d 249 (1938).

centage thereof.[3] As the trial justice pointed out, the mandate of §44-5-12 is clear: disproportionate taxation of real estate is illegal under Rhode Island law. No case that we know of has been decided by this court on the subject of disproportionate taxation.

In the absence of precedential decisions by this court, we look to the cases from other jurisdictions which have considered disproportionate real estate taxation.[4] Those cases make it clear that in order for a taxpayer to get relief, he must sustain the burden of showing a systematic, intentional under-valuation of other property in the locality.

Thus, in order for plaintiffs to prevail in the case at bar, they have the burden of proving that a substantial amount of property in North Providence was taxed at a lower percentage of fair market value than their property. The trial justice found that plaintiffs had not sustained this burden. As we have previously stated, we agree with this finding.

It is undisputed from the agreed statement of facts that plaintiffs' property was assessed at 60 percent of its fair market value on December 31, 1972. In fact, plaintiffs concede that their property was not overassessed on that assessment date. However, as the trial justice found, there is no evidence whatsoever to indicate what percentage of value the assessors used for other real estate in the town on that date or how many properties had not been revalued since 1960 and at what percentage of fair market value they were then assessed. Hence we cannot fault these findings;

---

[3]General Laws (1970 Reenactment) §44-5-12, in pertinent part, reads as follows:

"All property liable to taxation shall be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed one hundred per cent (100%). to be determined by the assessors in each town or city * * *."

[4]See Annot., 3 A.L.R. 1370 et seq. (1919); Bettigole v. Assessors o, Springfield, 343 Mass. 223, 178 N.E.2d 10 (1961); Rollins v. City of Dover 93 N. H. 448, 44 A.2d 113 (1945).

nor can we disagree with the trial justice's statement that he had no way of knowing at what percentage of fair market value real estate was assessed in 1960 at the time of the last general revaluation.

Likewise we agree with the trial justice's conclusion that the mere fact that the other properties in the same area as plaintiffs' property were not revalued in 1972 does not indicate that they were assessed at a lesser percentage of fair market value than plaintiffs' property. Since this dispute was submitted to the court on an agreed statement of facts, the trial justice was correct in his conclusion that, even though property values may have generally increased since 1960, he could not take cognizance of this presumption absent an agreed statement of fact of what that increase had been in North Providence or in any section of the town or as to any particular parcel in the town. He was bound by the facts agreed to by the parties and so are we. *Ahoskie Prod. Credit Ass'n* v. *Whedbee,* 251 N. C. 24, 110 S.E.2d 795 (1959). The case at bar is clearly distinguishable factually from *Duval* v. *City of Manchester,* 111 N. H. 375, 286 A.2d 612 (1971) advanced by plaintiffs. In that case the taxpayers' assessment was raised in 1968 after their purchase of the property to 40 percent of fair market value. The plaintiffs proved that some parcels in the city had not been reassessed in 40 years; that 50 to 60 percent of the 26,000 parcels in the city were assessed at values of more than 20 years past; that 50 to 60 percent of the property in the city was assessed at 20 to 30 percent of fair market value and that the assessment practices of the city at that particular time resulted in assessments ranging from 20 to 55 percent of fair market value. On those facts the court justifiably concluded that the plaintiffs were required to pay taxes which were disproportionately higher with relation to true value than taxes on other properties in the area and that, therefore, the plaintiffs had carried their burden of

proving that they were disproportionately taxed. In *Duval* the court held that the proper remedy was not to return the plaintiffs to the 1967 assessment but rather to determine the precise amount of abatement due them.

The plaintiffs further direct our attention to *Town of Sudbury* v. *Commissioner of Corps. & Taxation,* Mass., 321 N.E.2d 641 (1974). In that case the town of Sudbury sought injunctive relief and a declaratory judgment defining the proper role of the Commissioner of Corporations and Taxation and the State Tax Commission in enforcing the statutory duty of assessors to tax property at its full and fair cash value. A single justice of the Supreme Judicial Court of Massachusetts appointed a master and later confirmed the master's report and reported the case to the full court without decision on the pleadings and the master's report.

The master found that the use of fractional assessments in some towns and full assessments in others was discriminatory; that the duty of assessors was to assess property at its fair cash valuation; that illegal assessments had long been the rule rather than the exception throughout much of the Commonwealth; that the State Tax Commission had tried to establish equalized valuations at fair cash value, as required by statute, but that it had not been able to achieve acceptable uniformity or equalized valuations within acceptable reach of full and fair cash value; and that the result was discrimination against those cities and towns whose assessors acted lawfully, in favor of those whose assessors engaged in the illegal practice of fractional valuation. Thus, it is clear that in *Sudbury,* unlike the case at bar, there was a showing of basic facts which indicated deliberate and substantial violations of constitutional and statutory requirements.

The Supreme Judicial Court defined the powers of the Commissioner of Corporations and Taxation and the State

Tax Commission and granted certain declaratory relief. After pointing out the prerequisites which must be established before injunctive relief is granted in cases where taxpayers seek citywide equalization, the court pointed out that the case before it involved discrimination between one group of cities and towns and another and that this was somewhat different from a case involving discrimination within a city or town. Thus it is obvious that *Sudbury* is factually distinguishable from the case at bar and, except for the statement setting forth the prerequisites for injunctive relief, not in point here. In view of the trial justice's finding, which we affirm, that plaintiffs have failed to prove that they were being disproportionately taxed as a result of the December 31, 1972 assessment, we need not address ourselves to those prerequisites.[5]

Since we have found that the trial justice did not err in finding that the plaintiffs have failed to prove that they were being disproportionately taxed by the town of North Providence as a result of the December 31, 1972 assessment, it is unnecessary to consider the other issues raised by the plaintiffs regarding the remedies available for disproportionate taxation. For the same reason, we do not reach the constitutional questions, state and federal, raised by the plaintiffs.

---

[5]In *Town of Sudbury* v. *Commissioner of Corps. & Taxation,* Mass., 321 N.E.2d 641 (1974), the court said:

"We have not granted injunctive relief in such cases: '(1) unless basic facts exist showing essentially a deliberate and substantial violation of the constitutional and statutory requirements that property tax valuations shall be proportional; (2) unless the plaintiffs show themselves to be directly, significantly and adversely affected; (3) unless relief by ordinary abatement procedures or by an action at law will be seriously inadequate; and (4) unless equitable relief is shown to be practicable and appropriate in the sense that the assessors' constitutional and statutory violations are so great as to warrant seasonable equitable interference with normal tax assessment and collection processes.'" *Id.* at 321 N.E.2d at 648.

The plaintiffs' appeal from the judgment granting the defendants' motion to dismiss is affirmed and the judgment appealed from is reversed; the plaintiffs' appeal from the judgment denying their motion to vacate is denied and dismissed and that judgment is affirmed; the plaintiffs' appeal from the judgment for the defendants on the merits is denied and dismissed and that judgment is affirmed. The matter is remanded to the Superior Court for further proceedings.

*Thomas R. Merlino, Norman L. Grant,* for plaintiffs.

*Robert S. Ciresi, Louis Baruch Rubinstein,* for defendants.