[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff seeks review of the City of Newport tax assessment of the Sheraton Island Hotel on Goat Island. The Plaintiff filed an account with respect to the December 31, 1986 assessment in accordance with the provisions of R.I.G.L. §§ 44-5-15 and44-5-16. Plaintiff challenges the assessment of locality. The Defendant's position relies on Merlino v. Tax Assessors for Townof No. Providence, 114 R.I. 630, 337 A.2d 796 (1975) andFernandes Realty Corp. v. Lagace, 121 R.I. 513, 401 A.2d 43
(1979). Neither case, however, deals with a situation where an account has been filed. The use of an account is a statutory method to obtain judicial review of a tax assessment. That review framework was in place well before Section 44-5-11 was amended to require revaluations every ten years. When a taxpayer files an account, an assessor who does not then assess in accordance with the valuations set forth in the account is subject to judicial review of the assessment, Ewing v. Frank, 103 R.I. 96,234 A.2d 840 (1967). The assessor is obligated to ascertain the fair market value of the property and then apply whatever percentage he then uniformly used to determine assessed value — i.e. not the ratios used in the last revaluation, but the percentage uniformly used for this class of property as of the assessment date of the account.
After this action was commenced the Defendant retained William Coyle, M.A.I. ("Coyle") to make an appraisal of the property. His testimony indicates the City on December 31, 1986 overassessed Plaintiff's hotel property by $2,027,000.00. Coyle testified to an assessed value of $17,196,800, a figure derived by adjusting for the value of tangible personal property which was erroneously included in the original figure. The assessed value is $19,224,000.00. The Defendant through its own expert therefore essentially admits that the property is overassessed by approximately $2,027,000.
The Plaintiff argues that the Defendant for the period of December 31, 1986 through December 31, 1989, uniformly assessed commercial real estate subject to any kind of valuation during that period at sixty percent (60%) of its fair market value. The Defendant denies that assertion. But the Court need only look to the testimony of the Defendant himself to conclude that Plaintiff's position is correct. Defendant essentially admits to that percentage in his testimony. He used 60% when he assessed the Marriott Hotel when it was first assessed on December 31, 1988. He instructed Coyle to use the 60% of fair market value for his assessment appraisal as of December 31, 1986. According to Plaintiff's appraiser, Robert Flanagan, M.A.I., ("Flanagan") and Paul Hogan ("Hogan") another expert on behalf of Plaintiff, they were advised by the Defendant to use a 60% ratio. The data sent to the Rhode Island Department of Administration for the period as shown on Plaintiff's Exhibit 2 justifies the use of that percentage. Perhaps the clearest admission of the 60% ratio appears in Plaintiff's Exhibit 7 which includes a letter dated April 14, 1989 in which Defendant explains his revaluation of the Hotel Viking after renovations in which he applies a ratio of 60%.
Defendant Flanagan, Hogan and Coyle all agree that the best method of appraisal for this type of property is the income approach to value. They agree that true comparable sales are difficult to find. Defendant indicated he used the income approach to determine the assessment of the Marriott and the reassessment of Hotel Viking. Both Flanagan and Coyle agree that the cost approach would not be reliable in this situation.
Flanagan's testimony included a detailed explanation to justify the capitalization rate that he used, including return on equity, depreciation increments and the other factors which underlie the rate used. Flanagan explained how he kept taxes out of the capitalization rate. His report (Plaintiff's Exhibit 14) provides additional detail from which he determined the fair market value of the subject property to be $24,000,000.00 with an assessed value of $14,400,000.00.
Coyle never fully explained his method of determining a capitalization rate. It appears that his initial report utilizes a capitalization percentage figure based in part upon the very taxation which is under challenge here. Our Supreme Court has held such a basis for capitalization improper. Kargman v.Jacobs, 325 A.2d 543, 546 (1974). Coyle later changed his appraisal to eliminate taxation from his calculation, and also makes his own unexplained adjustment to the cost of sales figure, reducing it to $4,866,009.00. Flanagan, on the other hand, used a cost of sale figure of approximately $5,250,000.00 based on unaudited figures which were essentially later substantiated by the audited figures provided by Plaintiff's chief financial officer.
The most significant difference between Coyle's and Flanagan's appraisal in terms of the effect on the resulting fair market value calculation arises with respect to anticipated appreciation for a ten year period. Coyle uses 30% appreciation; Flanagan uses 5% appreciation.
Defendant, contrary to his own expert's report, suggests that no appreciation should be factored into the calculation. Defendant argues that net operating income for 1987-1990 with respect to the subject property is declining. However, the expert in forming his judgment with respect to the appreciation, must focus not just on the limited historical data available with respect to the ten year time frame, but forecast over the entire ten year period and form a judgment as to anticipated appreciation. Presumably, Flanagan factored in the net sales data and still concluded that 5% should be the "appreciation" figure. That figure strikes the Court as being arbitrarily low. On the other hand, Coyle's projection of 30% appreciation seems extremely high in light of the historical data.
A trial judge may pick and choose among evidence presented by experts. Id. at 546. In this particular instance, where a trial judge finds the evidence of each expert unreliable, he has discretion as does any trier of fact to ascertain on the basis of the entire record what he determines in this instance to be an appropriate appreciation rate. See, Ashton v. Jamestown TaxAssessors, 60 R.I. 388, 391, 198 A. 786 (1938); Lamont v. Townof New Hartford, 493 A.2d 298 (1985); Order of St. Benedict v.Gordan, 417 A.2d 881, 884 (1980). While this factfinder agrees that any appreciation over the ten year period would be modest in light of the historical data, the Court believes that an average of 1.5% per year over the ten year period would reasonably account for anticipated appreciation and thus adopts an appreciation factor of 15%.[1] While this determination is necessarily subjective, the Court views it as reasonable in light of what it believes would be modest growth during this period.
Based on the Court's evaluation of the evidence as discussed above, the Court makes the following findings:
1. The hotel real estate designated as Lot 2 on Newport Tax Plat 46 was assessed at the last revaluation as of December 31, 1982 for $19,224,000.00.
2. Plaintiff filed an account with the Defendant for the assessment of December 31, 1986 in accordance with the provisions of R.I.G.L. §§ 44-5-15 and 44-5-16.
3. The account is a true and full account and valuation of all the ratable estate owned or possessed by Plaintiff.
4. Plaintiff does not challenge the assessment of the tangible personal property but does challenge the assessment of the real estate.
5. Upon the filing of a proper account of its real estate, Plaintiff became entitled to a judicial review of its real estate assessment.
6. Plaintiff filed the actions consolidated for hearing here in accordance with the statutory requirements.
7. The Defendant uniformly assessed commercial real estate subject to any kind of revaluation during the period in question at 60% of its fair market value.
8. All of the appraisals presented in this matter support a reduction of the real estate assessment.
9. The audited financial figures show a cost of sales of $5,256,737.00 not the $4,866,009.00 used by Coyle and the Court finds the unaudited sales figure used by Flanagan to be reliable in that they were substantially confirmed by later audited figures.
10. Flanagan's other data (excepting the appreciation figure) and his methodology are sound and the Court adopts it for the purpose of valuing the subject property.
11. A 15% appreciation factor is justified and is adopted by the Court.
12. Using Flanagan's methodology and data, but utilizing a 15% appreciation factor, results in the Court's calculation of a capitalization rate as follows:
 75% 1st mtg. (10.5%-25 yrs.) constant 11.33% .0850
 25% equity Contribution at 10.00% .0250
 Basic Rate .1100
 Equity Build-up -.104
 Appreciation — .15 x .0627 -.0094
 Total Capitalization 9.02

13. Using the aforesaid rate, the capitalization process is: $2,907,737. divided by 10.64 (i.e. 9.02 plus 1.62) which equals $27,328,355. Deducting for the estimated value of personal property, the real estate value is $26,286,291. The assessment would be $26,286,301 times 60% which equals $15,771,786. That assessment value is rounded to $15,772,000.[2]
14. The Newport tax rate in effect during the four years in question was as follows:
 1987 = $26.95 per thousand
 1988 = $27.80 per thousand
 1989 = $28.75 per thousand
 1990 = $31.05 per thousand

15. Plaintiff paid all real estate taxes assessed to its real estate during the four years in question as follows:
 1987 = $ 518,086.80
 1988 = $ 534,427.20
 1989 = $ 552,690.00
 1990 = $ 596,905.00
 Total: $2,202,109.00

16. Plaintiff's real estate should have been assessed as follows:
 1987 = $ 425,055.60
 1988 = $ 438,461.60
 1989 = $ 453,445.00
 1990 = $ 489,720.60
 Total: $1,806,682.80

17. Section 44-5-30 of the R.I.G.L. provides as follows:
 "If the taxpayer has given in an account, and if on the trial of said petition, either with or without a jury, it shall appear that the taxpayer's real estate, tangible personal property, or intangible personal property has been assessed, if assessment has been made at full and fair cash value, at a value in excess of its full and fair cash value, or if assessment has purportedly been made at a uniform percentage of full uniform percentage, or if it shall appear that the tax assessed is illegal in whole or in part, the court shall give judgment that the sum by which the taxpayer has been so overtaxed, or illegally taxed, with his costs, be deducted from this tax, but if the taxpayer's tax be paid, whether before or after the filing of said petition, then the court shall give judgment for the petitioner for the sum by which he has been so overtaxed, or illegally taxed, plus the amount of any penalty paid thereon, with interest from the date on which said tax and penalty were paid and costs, which judgment shall be paid to the petitioner by the town treasurer out of the town treasury. If, however, on the trial of said petition, it shall appear that the taxpayer has fraudulently concealed or omitted any property from his account, or if it shall appear that the assessors have not assessed either the taxpayer's real estate or his tangible personal property or his intangible personal property at a value in excess of its full and fair cash value, if assessment has been made at full and fair cash value, or if assessment has purportedly been made at a uniform percentage of full and fair cash value, at a percentage in excess of such uniform percentage, and that the taxpayer has not been illegally taxed, the assessors shall have judgment and execution for their costs."
18. The plaintiff has been overtaxed during the four years in question for a total of $395,426.20. Counsel shall prepare a form of judgment in that amount, plus interest from the date the taxes were paid, plus costs.
[1] The Court notes that it is not using special training or knowledge in finding 15% to be a reasonable appreciation factor. The Court is simply acting as would any factfinder in evaluating the evidence. The appreciation factors that Coyle and Flanagan deemed to be reasonable were also necessarily subjective based on expectations as to the commercial real estate market over a ten year time frame, most particularly as it relates to hotels. Based on those expectations as reflected in the experts' testimony and appraisals, the Court simply exercises its factfinding prerogative and concludes that 15% is a reasonable factor (1.5% as a yearly average versus .5% or 3.0% as suggested by Flanagan and Coyle respectively).
[2] It should be noted that at such assessed value, the assessed value per room at the hotel is approximately $62,300. That is comparable to the assessed value per room at the Marriott Hotel in Newport (i.e. $62,552. per room) which the Court also believes on the basis of the evidence is comparable to the subject property. However, in that the Court is not basing its decision on comparability, the Court will not undertake a lengthy analysis of said evidence.