[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Island Development Corporation (Plaintiff) seeks judicial review of the City of Newport's tax assessment of certain property described as Lot 1 on Newport Tax Plot 46 (Goat Island Complex). In accordance with the statutory provisions of Rhode Island General Laws §§ 44-5-15 and 44-5-16, Plaintiff filed an account for the city's December 31, 1986 assessment. After the City of Newport failed to adjust the tax, Plaintiff appealed the December 31, 1986 assessment on the Goat Island Complex in Civil Action 87-503. Plaintiff thereafter filed Civil Action 88-479, a second appeal, challenging the December 31, 1987 assessment.
In January of 1988 Plaintiff made a declaration of condominium for all one hundred fifty-four (154) units located in the Goat Island Complex. Pursuant to this declaration, the tax assessor (Defendant) assessed each unit as a separate taxable entity. Plaintiff contends that it is entitled to judicial review without regard to the necessity of filing an account since this was the first assessment on each unit individually, and since each individual unit assessment exceeded its prior year value. Civil Actions 89-0530 and 90-0527 seek review of the assessment against Plaintiff's condominium units.
APARTMENT UNITS' ASSESSMENT
Civil Actions 87-0502 and 88-0479 involve the assessment against two (2) separate apartment houses and nineteen (19) harbor houses. Each of the two apartment buildings house forty-eight (48) and eighty-nine (89) dwelling units respectively. After the December 31, 1982 revaluation, this property was assessed at $12,853,000. Plaintiff did not challenge this assessment until after the December 31, 1986 assessment, at which point Plaintiff filed an account indicating a fair market value of $6,452,000. Notwithstanding Plaintiff's account, Defendant did not adjust its previous assessment and Plaintiff filed complaints for judicial review of both the 1986 and 1987 assessments.
The filing of an account is a statutory method by which taxpayers obtain judicial review of property tax assessments. This framework for review was established well before § 44-5-11
was amended to require revaluations every ten years. When a taxpayer files an account, an assessor who does not then assess in accordance with the valuations set forth in the account subjects the assessment to judicial review. Ewing v. Frank,103 R.I. 96, 234 A.2d 840 (1967). Defendant's reliance on Merlino v.Tax Assessors, 114 R.I. 630, 337 A.2d 796 (1975) and FernandesRealty Corp. v. Lagace, 121 R.I. 513, 401 A.2d 43 (1979) is misplaced. Neither case addresses the situation where the taxpayer has filed an account. The assessor is obligated to ascertain the fair market value of the property and then apply the uniform percentage factor applicable to this class of property as of the assessment date of the account.
Plaintiff argues that Defendant uniformly assessed commercial real estate subject to any type of valuation at sixty percent (60%) of its fair market value for the period between December 31, 1986 and December 31, 1989. Although Defendant denies this allegation, the Court finds that the Defendant has admitted to using a sixty percent (60%) ratio for commercial property.[1]
Moreover, the City engaged the services of expert real estate appraiser William Coyle and instructed him to employ a sixty percent (60%) ratio for the December 31, 1986 appraisal. Coyle thereafter used a sixty percent (60%) ratio for determining the assessed value of both the apartment units and the excess land. A review of the evidence satisfies this Court that Defendant uniformly applied a sixty percent (60%) ratio for similar commercial property during the pertinent periods.
Plaintiff has filed a full and accurate account for the December 31, 1986 assessment in accordance with §§ 44-5-15 and44-5-16. Although the City of Newport has not challenged the validity of this account, it became apparent at trial that two commercial buildings within the Goat Island Complex were not included in Plaintiff's account. This inadvertent omission, however, was insignificant since the income derived from these buildings was included in the assessment under the income approach to value. Section § 44-5-16 specifically provides that a taxpayer filing an account shall not be denied a right of review by reason of any immaterial inadequacies, inaccuracies, or omissions contained therein. Since Plaintiff's account was sufficiently detailed to permit Defendant to conduct a proper review of the assessment under the income approach, this Court finds that any omissions from the account were insubstantial and Plaintiff's right of review is unaffected.
The parties agree that the appropriate method for assessing the value of the apartment complex is the income approach. It is further agreed that the comparable sales method is inappropriate since sales of similar apartment complexes in similar locations would be difficult to locate and analyze. Plaintiff's account utilizes the income approach, and Plaintiff does not dispute Coyle's use of the income approach in assessing the value of the complex. With respect to the existing units, Coyle determined an assessed value of $6,050,278. Plaintiff's appraiser determined an assessed value of $6,565,945. Plaintiff concedes that the difference between these values is relatively minor.
After determining the value of the existing units, Coyle assessed the additional 11.28 acres of unimproved land at a value of well in excess of $6,000,000. Plaintiff contests this assessment. The city's zoning officer testified at trial that the only use permitted under the zoning ordinance for the excess land would be an extension of apartment use. Coyle on cross-examination agreed that multi-family dwelling units constitute the highest and best use of the property. An extension of additional units onto the excess land, however, can only be accomplished after approval from various regulatory authorities including the Newport Zoning Board (NZB), Newport Redevelopment Agency (NRA), the Department of Environmental Management (DEM), and the Coastal Resources Management Council (CRMC).
Plaintiff's expert, Paul Hogan, testified that the Goat Island Complex contained no excess land upon which the city could make a separate assessment. He further testified that the City does not ordinarily assess separately that portion of a developed parcel which exceeds density requirements. Hogan testified that to classify this excess land as a separate taxable parcel was highly speculative since various regulatory authorities must preapprove any additional development. Plaintiff contends that the entire Goat Island Complex, including this excess land, should be assessed under the income approach using only the actual income derived from the existing units. Plaintiff argues that this excess land has no independent value subject to assessment.
After a review of the entire record, this Court is convinced that Coyle's assessment of the excess land is incorrect. A finding to the contrary would require this Court to conclude that 13 acres of land housing 154 dwelling units is worth considerably less that 11.28 acres of unimproved land which could support a maximum of only 48 units. A compelling case has been made that the excess land is an inseparable portion of the entire complex with no separate assessable value. To separately assess that portion of a lot which exceeds density requirements defies both logic and common assessment practice. The existence of cross-easements over the parcel and the regulatory impediments to future development further support the Court's conclusion that the excess land in question has minimal separate assessable value. That notwithstanding, Plaintiff has represented in its brief that it would accept a valuation of $5 per square foot with respect to the excess land, and the Court, therefore, will value said land accordingly.
Given the inherent flaws in Coyle's testimony, the Court finds that Hogan's testimony regarding the assessed value as derived from the income approach is more credible than Coyle's corresponding testimony.[2]
This Court accepts Plaintiff's approach to calculating the assessment value of the Goat Island Complex as of December 31, 1986 and December 31, 1987. Under the income approach to value, the fair market value of the entire Goat Island Complex is $10,942,241. Applying the uniform ratio of sixty percent (60%) the assessed value of the property is $6,565,945. Adding to that the sum of $729,000 for excess land as adjusted, the total assessed value for the Goat Island Complex for 1986 and 1987 is $7,294,945.
CONDOMINIUMS' ASSESSMENT
In January of 1988, Plaintiff filed a declaration of condominium for the 154 dwelling units within the Goat Island Complex. In its December 31, 1988 assessment, the City of Newport assessed each of the 154 units separately, resulting in a total assessed value of $16,582,725. Within three months from the last day appointed for payment of the tax, Plaintiff petitioned this Court for judicial review alleging that the Goat Island Complex was assessed at a value in excess of that on the last preceding assessment day, and the the assessment was made utilizing a percentage in excess of the uniform percentage. Plaintiff filed Civil Actions 89-0534 and 90-0529 pursuant to its right to seek judicial review of any assessment that exceeds a prior years assessment under Rhode Island General Laws § 44-5-26.
Defendant assessed the value of the individual condominium units using the comparable sales method. After comparing the sales and asking prices for the 29 units actually sold in 1988, Defendant concluded that the actual average sales price equalled approximately ninety-six percent (96%) of the original asking price. Defendant applied this ninety-six percent (96%) ratio to the asking price of each of the remaining units to arrive at their fair market value. After assessing the fair market value, Defendant applied a forty percent (40%) ratio to calculate each unit's assessed value.
Defendant has admitted that he assessed all of the units on December 31, 1988 as fully completed without adjusting for necessary renovations. Lawrence Walsh, Plaintiff's expert, however, testified that not all of the units were complete and ready for sale. Walsh supplied Paul Hogan with a list of all the units and their unfinished work as of the December 31, 1988 assessment date. Hogan testified that in addition to his qualifications as a real estate appraiser, he is a developer with experience in supervising the construction of residential housing and condominium units in Newport County.
After reviewing the successful bidder's estimated costs of renovation, Hogan testified that the bid prices as set forth in Plaintiff's Exhibit 15 were fair and reasonable. Hogan further testified that he used these prices to compile a list of the units and their respective cost of completion. These figures are properly set forth in Plaintiff's Exhibits 16 (America units), 17 (Capella units), and 18 (harbor houses). The total cost of completion as shown in these exhibits is $2,703,247.04.
Defendant has admitted that Plaintiff is entitled to a reduction of the December 31, 1988 assessment in the amount of $1,228,400. Notwithstanding Defendant's admission, Plaintiff's experts have proven through competent and reliable evidence that a reasonable cost to complete renovations is $2,703,247.04. Based on the evidence, this Court finds that Plaintiff is entitled to deduct $2,703,247.04 from Defendant's fair market value assessment before applying the uniform forty percent ratio (40%). The Defendant has argued that it should not include items such as paint, carpet, cable television and landscaping. The Court cannot agree with that position. The Assessor has elected to assess each of these units as if fully completed and ready to sell at its asking price. Accordingly, those amounts set forth in Plaintiff's Exhibits 15, 16, and 17 as the cost to be completed should be offset against fair market value otherwise indicated.
Defendant admits that he did not utilize an absorption factor when calculating the assessed value of each unit.[3] Plaintiff objects to Defendant's failure to use an absorption factor and urges this Court to find that the absorption method is appropriate for assessing the value of the condominiums.
Rhode Island General Laws §§ 34-26-27 and 36-26-4 specifically provide that condominium units are considered separate individual parcels for taxation purposes. An absorption factor typically pertains where the taxpayer proposes a subdivision for an entire tract of land. C.W.K. Enterprises v.Dept. of Revenue, 10 OTR 49 (1985). Where vacant land is devoted to a residential subdivision, a developer's discount (absorption factor) is utilized to calculate the present value of the subdivision for property tax purposes. Id. The Oregon tax court noted, however, that the absorption method should be limited to cases where the property is not yet developed. Id.
Furthermore, once property is developed into separate taxable units, there is no legal or rational basis for discounting each unit merely because it is held in common ownership. Id. Seealso Glenpointe Associates v. Township of Teaneck, 10 N.J. Tax 506
(1989); Glenpointe Associates v. Township of Teaneck,10 N.J. Tax 288 (1988).
The purpose of the absorption method is to calculate the present value of an undeveloped subdivision by providing discounts based on the hypothetical length of time necessary to develop the lots and introduce them into the market. This Court is convinced that the absorption method should apply only to undeveloped parcels and not to developed land housing unsold units. Plaintiff's sole ownership of a majority of the unsold units should not entitle it to an added discount merely because the units sit on a single parcel of land. By analogy, Plaintiff's assertion of the absorption method would likewise be inapplicable of its unsold units were scattered throughout the city. A finding to the contrary would render current assessment methods impracticable since assessors would have to calculate a different absorption factor each year for every developer holding an inventory of unsold units in the city. Since Rhode Island law specifically categorizes condominiums as separate taxable entities, this Court finds that the absorption method is inapplicable to assessing the value of Plaintiff's condominium units.
The final issue of dispute involves the propriety of Defendant's separate assessment of $557,300 on certain development rights. While Defendant contends that the condominium documents reserved two land areas for future development, he admits that these areas could not be separately sold. Defendant further admitted that any development of these areas would require prior approval from the NZB, NRA, DEM, and CRMC. Plaintiff's expert, however, asserts that since development would need approval from several different regulatory agencies, the development rights are too speculative to support an assessed value prior to actual development.
A review of the evidence satisfies this Court that Defendant's assessment of the development rights is inappropriate. The necessity of prior approval from four separate regulatory authorities renders these development rights highly speculative. Prior to any actual development, it would be extremely difficult to calculate a fair assessed value since the lots cannot be sold separately. Moreover, Defendant was unable to cite a single example where similar rights were separately assessed. Accordingly, this Court finds that the development rights have negligible assessable value for tax purposes. However, since Plaintiff's proposed finding of fact number 58 demonstrates its willingness to accept Defendant's assessed value of $193,450, the Court will likewise adopt this value for the development rights.
The Court makes the following findings of fact and conclusions of law:
Apartments
Civil Action Nos: 87-0502 and 88-0479
1. The Goat Island Complex was assessed at the last revaluation as of December 31, 1982 for $12,853,000.
2. Plaintiff did not legally challenge that assessment until 1987.
3. Plaintiff filed an account with Defendant for the assessment of December 31, 1986 in accordance with the provisions of R.I.G.L. §§ 44-5-15 and 44-5-16.
4. The account is a true and full account and valuation of the ratable estate owned or possessed by Plaintiff with the exception of the omission of two relatively small commercial structures.
5. The omission of the two commercial structures was inadvertent and not substantial.
6. This case involves real estate that contains 154 apartment units and the income from the commercial units was commingled with the income from the apartment units for the purpose of determining the gross and net income of this property when applying the income approach to value to determine the real estate's fair market value.
7. Upon the filing of a proper account, Defendant has an obligation to reassess the property contained in the account at what he deems its full and fair cash value or a uniform percentage thereof.
8. Defendant did not make the reassessment required by the filing of the account.
9. Upon the filing of a proper account of its real estate, Plaintiff became entitled to a judicial review of its real estate assessment.
10. Plaintiff filed the actions consolidated for trial here in accordance with the statutory requirements.
11. The Defendant uniformly assessed commercial real estate subject to any kind of revaluation during the period in question at 60% of its fair market value.
12. Defendant's expert, Coyle, conducted an appraisal and assessment of Plaintiff's real estate. The Court rejects Coyle's testimony with respect to the assessment of the apartments.
13. The best method of appraisal for this apartment complex is the income approach to value.
14. Plaintiff's appraiser, Hogan, using the income approach to value, appraised the Goat Island Complex as having a fair market value as of December 31, 1986 of $10,943,241 and an assessed value of $6,565,945. The Court adopts Hogan's testimony and finds the fair market value of the Goat Island Complex (excluding value to be assigned to "excess land") is $10,943,241 and assessed value is $6,565,945.
15. Coyle's determination that there is "excess land" in the Goat Island Complex of 11.2 acres is unfounded and erroneous.
16. The best and highest use of the Goat Island Complex is multi-family dwelling units.
17. Any additional dwelling units would require the approval of NZB, DEM, CRMC and NRA.
18. It is not the practice of the Defendant to assess separately that portion of a developed parcel which exceeds the density requirements for the development on the parcel and tax the potential right to develop.
19. It is too speculative to assume that the NZB, NRA, DEM and CRMC will approve any additional units within the Goat Island Complex and, therefore, no significant value should be given to the "excess land."
20. It any assessment of the "excess land" is allowed it should be calculated at $5.00 per square foot. The Plaintiff has represented to the Court that it will accept an assessment at that value.
21. It is undisputed that there are 243,000 square feet of excess land on the Goat Island Complex based on the zoning ordinance's density requirements. Assigning a value of $5 per square foot, the fair market value of the excess land is $1,215,000, and the assessed value is $729,000.
22. When the assessment of $729,000 for the "excess land" is added to the assessed value adopted in finding number 14, a total assessed value of $7,294,945 is indicated and is hereby adopted by the Court.
23. The Newport tax rate during the two years in question for the apartment complex challenge was as follows:
1987 = $26.95 per thousand
1988 = $27.80 per thousand
24. Plaintiff paid all real estate taxes assessed to its real estate for the years 1987 and 1988 as follows:
1987 = $346,388 (rounded)
1988 = $357,313 (rounded)
Total: $703,701
25. Plaintiff's real estate should have been assessed at no more than $7,294,945 for the assessment dates of December 31, 1986 and December 31, 1987 resulting in taxation as follows:
1987 = $196,600 (rounded)
1988 = $202,781 (rounded)
Total: $399,381
26. Plaintiff is entitled to a judgment of $149,788 (Case No. 87-0503) for the year 1987 and $154,532 (Case No. 88-0480) for the year 1988 plus interest and costs.
Condominiums
Civil Action Nos. 89-0534 and 90-0529
27. In January of 1988, Plaintiff filed a declaration of condominium for the 154 dwelling units located in the Goat Island Complex.
28. On December 31, 1988 Defendant assessed each of the 154 units separately increasing the total assessment for the 154 units to $16,582,725.
29. Plaintiff filed a proper appeal under section 44-5-26 for the assessments of December 31, 1988 and December 31, 1989 in these civil actions above set forth.
30. Defendant obtained an asking price list for the units and determined that the twenty-nine (29) sales made during 1988 approximated 96% of the asking price. Defendant then determined that all remaining units on December 31, 1988 had a fair market value of 96% of the listed asking price and an assessed value of 40% of fair market value.
31. Defendant on December 31, 1988 and December 31, 1989 uniformly assessed residential condominium units and single family property, subject to any kind of revaluation, at 40% of their fair market value.
32. For the assessment of December 31, 1988, Defendant assumed that all units were complete and ready for immediate sale at the listed asking price.
33. The units assessed to Plaintiff on December 31, 1988 were not complete and ready for sale. The cost to complete the unfinished units was $2,703,247.04, as shown on Plaintiff's Exhibits 15, 16, 17 and 18.
34. Since the Defendant has assessed these units on the basis of their listed asking price, he should have made an allowance for all construction costs necessary to complete the units as of December 31, 1988 and to thereby obtain that asking price.
35. Defendant inspected the unsold Harbor House units as of December 31, 1989 and determined that the "cost to complete" those units totalled $1,228,400 and he made a reduction to his assessment in that amount. Defendant admits that he should have made the same adjustment to the December 31, 1988 assessment.
36. The Court rejects Defendant's determination of the cost to complete and finds that Plaintiff's figure of $2,703,247.04 accurately represents the cost to complete the unfinished units.
37. On December 31, 1988 and December 31, 1989 Defendant made a separate assessment of Lot No. 1 as being areas reserved for future development (development rights) and assessed Lot No. 1 at $557,300.
38. Defendant admitted to an over assessment of development rights and testified that the assessment should have been $365,000 for each year.
39. It is not the Assessor's usual practice to assess areas where future development could occur in condominium projects.
40. Any future development of additional condominium units would require the approval of the NZB, NRA, DEM and CRMC.
41. Although the future development of additional units at this condominium complex in highly speculative, Plaintiff, in its proposed finding of fact number 58, indicated that it would acquiesce to Defendant's assessed value of $193,450. Accordingly, the Court adopts that value.
42. A market absorption factor should not be applied by the Tax Assessor to determine the fair market value of the units in the Plaintiff's ownership as of December 31, 1988 and December 31, 1989.
43. After making the appropriate reductions for the costs of completion, the assessed values for December 31, 1988 are as follows: Capella Units — $4,488,400 (rounded); America Units — $3,043,000 (rounded); Harbor House Units — $4,635,200 (rounded). The Court has used Plaintiff's proposed findings of fact Addenda A, B, and C to assist in this calculation.[4]
44. Any assessment of Lot No. 1 ("development rights") should be at the Tax Assessor's corrected amount of $365,000.
45. The appealed assessments of December 31, 1988 total $14,450,300. (Schedule A attached to complaint.)
46. The assessment of December 31, 1988 should have totalled as follows:
 Capella Units $4,488,400 (rounded)
 America Units $3,043,000 (rounded)
 Harbor House Units $4,635,200 (rounded)
 Lot No. 1: Development Rights $ 365,000
 Total: $12,531,600

47. The tax rate for the assessment of December 31, 1988 (i.e. 1989) is $28.75 per thousand.
48. Plaintiff paid all real estate taxes assessed on December 31, 1988 in the total amount of $415,446 (1989 tax).
49. Based upon a total assessment of $12,531,600. (see finding 46 above) Plaintiff should have paid $360,295 for 1989.
50. Plaintiff in Case No. 89-0534 is entitled to a judgment of $55,151.00 plus interest and costs.
51. For the assessment of December 31, 1989, the assessment of each unit remaining in the ownership of Plaintiff as of the time of appeal is $12,913,000 (rounded). The Court has used Plaintiff's Addendum D to its proposed findings of fact as an aid in making this calculation.[5]
52. The appealed assessments of December 31, 1989 total $11,649,500 (see Schedule A attached to Complaint in Case No. 90-0529).
53. In that the Plaintiff was not overassessed for its 1990 tax, Plaintiff recovers no damages in Case No. 90-529.
54. Plaintiff is entitled to the following judgments plus interest and costs:
 Case No. 87-0503 $149,788
 Case No. 88-0480 $154,532
 Case No. 89-0534 $ 55,151
 Case No. 90-0529 $ — 0 -
 Total: $359,471

Counsel shall submit an appropriate form of judgment in each of the above actions for entry by the Court.
[1] Not only was such admission made during the trial of these cases, but the Court found in the companion cases, Goat IslandRealty Corp. v. Booth (Civil Actions 87-0502, 88-079, and 90-0527) (pages 2-3), that Defendant had also admitted to applying a sixty percent (60%) ratio to commercial property.
[2] The Court initially discusses the inconsistencies in Coyle's testimony in the body of the decision, supra.
Furthermore, Coyle erroneously assumed that the entire Goat Island complex contained 28.2 acres. Plaintiff's experts, Defendant, and the zoning officer all agree that the appropriate acreage is 24.2.
[3] The absorption method calculates a hypothetical sales price for each lot in a subdivision through the comparable sales method. Expenses of developing the lots are then deducted to arrive at the developer's net anticipated future receipt. To calculate the present value of the future receipt, a discount is applied which accounts for both the time in which all lots will be absorbed into the market and all holding and selling costs incurred. See C.W.K. Enterprises v. Dep't, of Revenue, 10 Or. T.C. 49 (1985).
[4] While acknowledging the use of Plaintiff's addenda, the Court notes that the monetary figures were otherwise included in the evidence before it. These figures can also be derived from Plaintiff's exhibits 15-18. If the parties do not agree with the appropriateness of this approach, they may submit a post-judgment petition detailing their challenge and their proposed method of calculation.
[5] While acknowledging the use of Plaintiff's addenda, the Court notes that the monetary figures were otherwise included in the evidence before it. These figures can also be derived from Plaintiff's exhibits 15-18. If the parties do not agree with the appropriateness of this approach, they may submit a post-judgment petition detailing their challenge and their proposed method of calculation.